**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

FEB – 5 2019

JAMES W. McCORMACK, CLERK

By:_____ DEP CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

UNITED STATES OF AMERICA

v.

1. MARCUS O. MILLSAP, aka Red,
2. WESLEY S. GULLETT, aka Bad Company, aka BC,
3. JEFFREY L. KNOX, aka 100%,
4. JAMES SCOTT OLIVER, aka Scottie,
5. TIMOTHY J. FERGUSON, aka TJ,
6. KEVIN M. LONG,
7. RANDALL RAPP,
8. ADAM F. MITCHELL, aka Pork Chop,
9. CHRISTOPHER BUBER,
10. RUSSELL ROBINSON,
11. BRADLEY CHAMBERS,
12. APRIL HOWELL, aka Apes,
13. SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer,
14. PAULA S. ENOS,
15. CAREY MOONEY,
16. COURTNEY TALLEY, aka Courtney Shreckhise, aka Courtney Caldwell,
17. AMANDA RAPP,
18. TROY R. LOADHOLT, aka Tricky,
19. DAVID D. SINGLETON, aka LA,
20. DARLENE WALKER,
21. MICHAEL J. ROBERTS,
22. SHELBY L. THOMPSON, aka Shelby Roberts,
23. COREY A. FORD,
24. CORY S. DONNELLY,
25. LESA A. STANDRIDGE,
26. DALLAS D. STANDRIDGE,
27. JEFFREY G. HOWELL, aka Loon,
28. RICHARD K. HAMPTON,

CASE 4:17CR00293 BSM

18 U.S.C. § 2
18 U.S.C. § 1959
18 U.S.C. § 1962(d)
18 U.S.C. § 922(g)(1)
18 U.S.C. § 924(c)
21 U.S.C. §§ 841(a)(1), (b)(1)(A)—(C),
21 U.S.C. § 846

29. SUSAN HAMPTON,
30. APRIL M. TEETER, aka April Crain,
31. MELISSA D. KIZER, aka Mel,
32. ANDREW R. SYVERSON, aka Drew,
33. ROBERT H. CHANDLER, aka Robbie,
34. BRITTANY FERGUSON, aka Brittany
    Gideon,
35. BRITTANIE N. HANDLEY,
36. TIFFANY L. PARKER,
37. HEATH KIZER,
38. RALPH A. ROSS, aka RA,
39. BRITANNY S. CONNER,
40. KATHRINE R. ROSS, aka Katie,
41. CHRISTOPHER S. HELMS,
42. TONY L. HEYDENREICH,
43. VALERIE J. BAKER, aka Valerie French,
44. THOMAS I. PLAISANCE, JR., aka
    Tommy,
45. WESLEY W. PIERSON,
46. HENRI T. KEENER, II,
47. JUSTIN B. HOWELL, aka Bubba,
48. JAYME L. SHORT,
49. AMOS ADAME,
50. SKIPPY D. SANDERS,
51. JARED R. DALE,
52. JAMES NICHOLAS GEORGE, aka Nick,
53. KEITH C. SAVAGE, aka KC,
54. JOSEPH D. PRIDMORE.

SUPERSEDING INDICTMENT

THE GRAND JURY CHARGES:

**COUNT ONE:**
*[18 U.S.C. § 1962(d) – Conspiracy to Violate RICO]*

At all times relevant to this Superseding Indictment:

## I.     The Enterprise

1.     The defendants, MARCUS O. MILLSAP, aka Red; WESLEY S. GULLETT, aka Bad Company, aka BC; JEFFERY L. KNOX, aka 100%; JAMES SCOTT OLIVER, aka Scottie; TIMOTHY J. FERGUSON, aka TJ; KEVIN M. LONG; APRIL HOWELL, aka Apes; SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer; and PAULA S. ENOS, and others known and unknown to the Grand Jury, were members and associates of the New Aryan Empire criminal organization ("NAE"), whose members and associates engaged in, among other things, narcotics trafficking, witness intimidation and retaliation, acts involving murder, kidnapping, and aggravated assault.   At all times relevant to this Superseding Indictment, the NAE criminal organization operated in the Eastern District of Arkansas and elsewhere.

2.     NAE, including its leadership, members, and associates, constituted an "enterprise," as defined in 18 U.S.C. § 1961(4), that is, a group of individuals associated in fact, although not a legal entity, which was engaged in, and the activities of which affected, interstate and foreign commerce.   The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.     In 1990, a group of inmates in the Arkansas Department of Corrections united to "preserve the Caucasian race" and protect themselves from rival prison inmates of minority

3

races. Founded on the principles of white supremacy, this group was named the New Aryan Empire, or NAE. Affiliating with leading white supremacy organizations such as the Aryan Brotherhood, the NAE quickly gained prominence and expanded its operations into criminal endeavors. In so doing, the NAE asserted itself both within the prison system and the surrounding communities as members were released from incarceration. The areas of Russellville and Pope County in the Eastern District of Arkansas were home to a high concentration of NAE members. NAE spread to neighboring states and communities. Present membership is at approximately 5,000 members.

4.   The NAE was founded by an inmate at the Pope County Detention Center in Russellville, Arkansas. The NAE was originally controlled by five members, known as the High Elders. The High Elders oversaw all NAE operations, controlled membership, and managed correspondence. Serving as a committee, the High Elders voted on matters of NAE importance and transmitted their decisions throughout the enterprise.

5.   Beneath the High Elders, the NAE was divided into two groups - those who were incarcerated and those who were not. Inside the prison system, the NAE was comprised of units for each penal facility. Each unit was governed by a Yard Representative, or Yard Rep. All Yard Representatives reported directly to an "inside" President, who oversaw all NAE activities by incarcerated members. Outside the prison system, the NAE was comprised of Chapters for specific geographic regions or locations. Each Chapter was governed by a President, Vice President, Secretary, Treasurer, and Sergeant at Arms. In turn, all Chapters reported directly to an "outside" President, who oversaw all NAE activities by un-incarcerated members. Similar to the Chapter structure, the "outside" President was assisted by a Vice President, Secretary, Treasurer, and Sergeant at Arms.

4

6.     On or about November 3, 2015, the NAE, by decree of the NAE founder, formed a Supreme Council to oversee all enterprise operations and business affairs. The Supreme Council was comprised of nine senior NAE members and was tasked with ensuring the betterment and advancement of the NAE. As with the High Elders previously, the Supreme Council voted on matters of NAE importance and transmitted their decisions throughout the membership. Such decisions were made by majority vote. However, the original founder of the NAE retained the right to veto any decision made by the Supreme Council. In addition to voting, the Supreme Council's duties included the appointment of NAE members to leadership positions.

7.     The NAE had a strict hierarchy for management and decision-making processes. Using a militaristic and corporate rank structure to denote authority and delegate responsibilities, NAE leaders held titles such as President, Vice President, Secretary, Treasurer, Sergeant at Arms, and Prospect.

8.     To obtain members, the NAE recruited both within and outside the prison system. To become an NAE member, an individual had to be sponsored by a preexisting NAE member for a period of at least six months. During this probationary period, the aspiring NAE member, referred to as a Prospect, was required to prove his/her allegiance to the NAE and his/her value as a potential member. Passing the probationary period is commonly achieved through the commission of crimes. Once a Prospect became a full NAE member, the individual received an NAE tattoo, referred to as a patch.

9.     To maintain order and ensure allegiance, the NAE adopted a code of conduct for its members. Comprised of 23 rules, this code called for members to, among other things, not fraternize outside the Caucasian race, not speak with law enforcement, not "snitch" on a fellow

NAE member, and not be homosexual or a rapist or molester. The code of conduct also required members to carry themselves in a manner that is worthy of respect and ensure the protection of one another. Additionally, the code required members to pay ten percent of all earnings back to the NAE. Violations of the code resulted in disciplinary actions, with the degree of punishment depending on the code that was violated and how the membership voted to handle the situation. The range of punishment included fines, physical assaults and batteries, expulsion (known as "being X'ed out"), and death. This code applied to both incarcerated and outside NAE members.

10. NAE members held meetings to collect dues and earnings, examine membership issues, strategize illegal conduct, disseminate enterprise correspondence, share enterprise literature, and discuss criminal activities. The funds collected were used to satisfy bonds to obtain the release of members from jail, to support members and their families in times of need, and to further NAE criminal activities. The money was also used to further the NAE's main source of income, drug distribution.

11. Females associated or affiliated with the NAE are commonly referred to as "featherwoods." Featherwoods often have tattoos of NAE-related symbols, phrases, and acronyms.

12. Despite having numerous incarcerated members, NAE maintains communications throughout the enterprise by using a variety of means. Incarcerated members frequently write letters to discuss NAE business. Such correspondence is transmitted both inside the prison system, and outside to un-incarcerated members. Moreover, incarcerated members often utilize contraband cellular telephones, that is, devices impermissibly smuggled into penal facilities, to communicate with outside members. Incarcerated and un-incarcerated members utilize

Facebook to discuss NAE business. While some of these communications are in plain language, others employ codes to thwart law enforcement scrutiny.

13. To distinguish themselves from both rival and allied groups, NAE members employ a variety of indicia, including, but not limited to, numbers, letters, symbols, tattoos, slogans, terminology, hand gestures, and greetings. Many of these indicia portray the NAE's white supremacy roots and include, but are not limited to, the following:

a. <u>Swastika</u>: Widely used by various white supremacist groups as a symbol of white power. Commonly depicted in tattoos, artwork, and internet memes among NAE members and associates.

b. <u>Lightning Bolts</u>: Nazi symbol signifying the Schutzstaffel (SS), who were Heinrich Himmler's police forces during the Nazi regime. The lightning bolts are used as a symbol of violence, anti-Semitism, white supremacy, and fascism by various neo-Nazi and other white supremacist organizations throughout the world.

c. <u>Reichsadler</u>: This symbol depicts an eagle, representing power and strength, clutching a swastika and was known as the formal symbol of Adolf Hitler's Third Reich. The NAE use the Reichsadler in their patch. The Reichsadler is also commonly depicted in tattoos, photos, artwork, and memes that are shared between NAE members and associates.

d. <u>1488</u>: The 14 represents the "14 Words" written by David Lane, founder of The Order, a white supremacist organization: "*We must secure the existence of our people and a future for white children.*" The 88 represents the "88 Precepts," which is a manifesto written by David Lane that lays out precepts

7

for living a white supremacist lifestyle. The number eight is also the eighth letter of the alphabet, "H," with 88 standing for HH, "Heil Hitler."

e.   <u>Peckerwood, Wood, or Wood-Wood</u>:  Peckerwood is a common term used by white prison inmates, white supremacist organizations, and Aryan Brotherhood groups to identify themselves. Wood is commonly used as an abbreviation for peckerwood.

f.   <u>Heil Hitler Salute</u>:  This hand gesture was used by the Nazi regime to demonstrate loyalty to Adolf Hitler, his core beliefs of white supremacy, and the Third Reich.

14. The NAE patch is comprised of a swastika with a dagger in the middle, two additional swastikas, an Eagle perched on top of the dagger, two maple or oak leaves, and blood dripping from the dagger. The Eagle represents freedom; the dagger stands for W.A.R. (there is a time for the waging of war and they are warriors); the large swastika represents white power; the three swastikas represent the trinity of loyalty, honor and respect; the leaves, whether maple or oak, signify strength, as those trees when grown and deeply rooted are strong and hard to move; and the drop of blood symbolizes the blood shed by brothers for the protection and advancement of their family.

15. The NAE adopted the slogan "To The Dirt". This slogan represents that NAE membership is for life, that is, either dying as an NAE member, or being killed as a result of leaving or being expelled from the NAE. Similarly, the NAE transliterated this slogan into numeric representations, "234" and "II III IV", with the number two representing the word "To", the number three representing the word "The", and the number four representing the word "Dirt". Lastly, NAE members utilize the mantra and salutation "Love, Honor, and Respect".

8

16.  The NAE rule structure, organizational management, and emphasis on loyalty fomented an environment whereby members would protect one another, both from physical violence and criminal liability. Junior members and associates frequently accepted responsibility for the commission of crimes committed by senior members and leaders. This was done in order to protect those senior members and leaders, demonstrate loyalty, and obtain, maintain, and increase rank within NAE. While seemingly illogical, members commonly engaged in such behavior, knowing that the NAE would protect and support them and their families during their incarceration.

17.  NAE uses its power to create fear and intimidation that shields its members from criminal responsibility, ensures the timely payment of drug debts, and prevents the theft of members' money or drugs. Violent retribution is an important activity of the enterprise. Such violent retribution helps enforce loyalty to the enterprise that is necessary to the smooth running of its criminal activities.

18.  Members of NAE often associate with other white supremacy groups, such as the White Aryan Resistance ("WAR"). WAR has similar core beliefs and rank structure as the NAE. As such, it is not uncommon for the two groups to collaborate and comingle to further their criminal objectives, including narcotics distribution.

## II.   The Purposes of the Enterprise

19.  The purposes of the NAE criminal enterprise, including its members and associates, included, but were not limited to, the following:

        a.  Maintaining, protecting, and expanding the power, territory, operations, reputation, and proceeds of the NAE criminal enterprise through intimidation, threats of violence, and actual acts of violence;

b. Promoting, enhancing, and concealing the illegal activities of the NAE criminal enterprise in order to enrich and financially assist its leaders, members, and associates;

c. Hindering and obstructing law enforcement efforts to investigate the illegal activities of the NAE in order to protect the criminal enterprise by keeping rivals, witnesses, informants, cooperating defendants, and the public-at-large in fear of its leaders, members, and associates;

d. Protecting its leaders, members, and associates from physical violence perpetrated by rivals and ensuring the overall safety, security, and prosperity of its leaders, members, and associates.

## III.    The Means and Methods of the Enterprise

20. Among the means and methods by which the leaders, members, and associates of the NAE criminal enterprise conducted, and participated in the conduct of, the affairs of the enterprise were the following:

a. Leaders, members, and associates created, implemented, advanced, promoted, and utilized an organizational structure and hierarchy to promote organization and command within the enterprise;

b. Leaders, members, and associates created, implemented, advanced, promoted, and enforced various rules to maintain an organized structure and command within the enterprise;

c. Leaders, members, and associates met regularly, and used various means of correspondence, to identify, discuss, and vote on enterprise matters, such as membership issues, disciplinary matters, coordination of criminal

activities, and thwarting law enforcement scrutiny, as well as to receive support, encouragement, and approval for carrying out criminal activities to further the success of the enterprise;

d.      Leaders, members, and associates used, and threatened to use, violence, such as kidnapping, battery, aggravated assault, and acts involving murder, to preserve and protect the power, territory, reputation, and profits of the enterprise, as well as to protect the enterprise by hindering, obstructing, and preventing law enforcement authorities from identifying, apprehending, and successfully prosecuting and punishing the offenders;

e.      Leaders, members, and associates obtained, transported, stored, packaged, and distributed controlled substances to promote, support, and enhance the enterprise and its members' and associates' activities;

f.      Leaders, members, and associates received, transported, stored, packaged, concealed, and transferred the illicit proceeds derived from their illegal activities to promote, support, and enhance the enterprise and its members' and associates;

g.      Leaders, members, and associates obtained, transported, stored, maintained, carried, and used various weapons, such as firearms and knives, to be used for protection of the enterprise and its members' and associates, as well as in the commission of crimes; and

h.      Leaders, members, and associates concealed, altered, mutilated, and destroyed evidence in order to prevent law enforcement authorities from

identifying, apprehending, and successfully prosecuting and punishing members and associates of the enterprise.

## V.    The Racketeering Conspiracy

21.  Beginning in or around 2014, and continuing to on or about the date of this Superseding Indictment, in the Eastern District of Arkansas, and elsewhere,

MARCUS O. MILLSAP, aka Red ("MILLSAP");

WESLEY S. GULLETT, aka Bad Company, aka BC ("GULLETT");

JEFFERY L. KNOX, aka 100% ("KNOX");

JAMES SCOTT OLIVER, aka Scottie ("OLIVER");

TIMOTHY J. FERGUSON, aka TJ ("T.J. FERGUSON");

KEVIN M. LONG ("LONG");

APRIL HOWELL, aka Apes ("A. HOWELL");

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer ("S. FERGUSON"); and

PAULA S. ENOS ("ENOS"),

collectively "the defendants," and other persons known and unknown to the Grand Jury, each being a person employed by, and associated with, the New Aryan Empire criminal enterprise ("NAE"), described above in paragraphs 1 through 20 of this Count, an enterprise engaged in, and the activities of which affected, interstate and foreign commerce, did knowingly and intentionally conspire and agree together and with each other to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity, as defined in Title 18, United States Code, Sections 1961(1) and (5), which consisted of multiple acts involving:

a.    Murder, in violation of Arkansas Code Annotated §§ 5-10-101, 5-10-102, 5-3-201, 5-3-202, 5-3-301, and 5-3-401;

12

   b. Kidnapping, in violation of Arkansas Code Annotated §§ 5-11-102, 5-3-201, 5-3-202 and 5-3-401;

and multiple acts indictable under

   c. Title 18, United States Code, Section 1512 (relating to tampering with a witness, victim, or an informant);

   d. Title 18, United States Code, Section 1513 (relating to retaliating against a witness, victim, or an informant);

and multiple offenses involving the distribution and possession with intent to distribute controlled substances, specifically a mixture or substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Sections 846, 841(a)(1), and 841(b)(1)(A).

It was further part of the conspiracy that each defendant agreed that a conspirator would commit at least two acts of racketeering activity in the conduct of the affairs of the enterprise.

## A. Means by Which the Object of the Conspiracy Were to Be Accomplished

 22. The object of the conspiracy were to be accomplished in substance as follows:

   a. MILLSAP, an NAE associate, GULLETT, the outside President and Yard Representative of NAE, and KNOX, an Elder in NAE, and others, would direct and coordinate the activities of the NAE, including its members and associates, insofar as those activities included the commission of crimes of violence, including attempts and conspiracy to commit murder, solicitation to commit murder, assault with a dangerous weapon, witness tampering, intimidation and retaliation, and narcotics trafficking.

13

b. MILLSAP, GULLETT, and KNOX, along with NAE members LONG and S. FERGUSON, and NAE associates OLIVER, T.J. FERGUSON, A. HOWELL, and ENOS, and others, would carry out crimes of violence, including attempts and conspiracy to commit murder, solicitation to commit murder, assault with a deadly weapon, witness tampering, intimidation and retaliation, and narcotics trafficking, to preserve, protect and expand the power and financial profits of the NAE criminal enterprise.

c. MILLSAP, GULLETT, KNOX, OLIVER, T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, and ENOS, and others, would distribute and possess with the intent to distribute narcotics, including methamphetamine.

d. GULLETT, KNOX, LONG, and others would obtain, possess and use firearms and ammunition to preserve and protect the NAE criminal enterprise and its members and associates.

## B. <u>Overt Acts</u>

In furtherance of the racketeering conspiracy, and to achieve the object of the conspiracy, the defendants, and others known and unknown to the Grand Jury, committed and caused to be committed various acts, on or about the following dates, within the Eastern District of Arkansas, and elsewhere, including, but not limited to, the following:

23. On May 1, 2014, MILLSAP sold approximately 42.69 grams of methamphetamine actual to Bruce Wayne Hurley in exchange for $3,600.

24. On May 2, 2014, MILLSAP possessed approximately 1.35 grams of methamphetamine actual and $3,700 on his person and approximately 80 grams of methamphetamine actual and $4,019 in his vehicle.

14

25.  On a date unknown in or around 2014, MILLSAP offered an NAE associate identified to the Grand Jury $20,000 to kill Bruce Wayne Hurley.

26.  On a date unknown but beginning in or around 2015, and ending no later than May 2, 2016, MILLSAP offered an NAE associate identified to the Grand Jury an unknown amount of money to kill Bruce Wayne Hurley.

27.  In or around December 2015, GULLETT offered an NAE associate identified to the Grand Jury $50,000 to kill Bruce Wayne Hurley.

28.  In or around 2015, MILLSAP and GULLETT possessed approximately one kilogram of a mixture and substance containing a detectable amount of methamphetamine at MILLSAP's home in Little Rock, Arkansas, that they intended to distribute.

29.  In or around 2015, GULLETT distributed a one-half pound of a mixture and substance containing a detectable amount of methamphetamine.

30.  Beginning in or around 2015 and continuing through in or around 2017, A. HOWELL possessed at least one pound of a mixture and substance containing a detectable amount of methamphetamine.

31.  Between in or around 2015 and 2016, MILLSAP and GULLETT worked with each other and others to distribute a mixture and substance containing a detectable amount of methamphetamine.

32.  On a date unknown but beginning no earlier than in or around 2015, and ending no later than January 4, 2016, GULLETT offered KNOX $1,000 and prescription pills to assist GULLETT in the murder of Bruce Wayne Hurley.

33.  Between in or around August 2015 and January 4, 2016, MILLSAP solicited GULLETT to kill Bruce Wayne Hurley in retaliation for Hurley providing information to law

enforcement relating to MILLSAP's involvement in the sale and distribution of methamphetamine.

34.  Between in or around August 2015 and January 4, 2016, GULLETT asked KNOX to introduce GULLETT to Bruce Wayne Hurley in order for GULLETT to kill Hurley in retaliation for Hurley providing information to law enforcement relating to MILLSAP's involvement in the sale and distribution of methamphetamine.

35.  Between in or around December 2015 through in or around January 2016, MILLSAP offered an NAE member identified to the Grand Jury a Harley Davidson, worth approximately $30,000, to kill Bruce Wayne Hurley.

36.  In or around 2016 and continuing through in or around 2017, S. FERGUSON possessed at least one pound of a mixture and substance containing a detectable amount of methamphetamine.

37.  In or around 2016 and continuing through in or around 2017, T.J. FERGUSON possessed at least one pound of a mixture and substance containing a detectable amount of methamphetamine.

38.  In or around 2016 and continuing through in or around 2017, LONG possessed at least one pound of a mixture and substance containing a detectable amount of methamphetamine.

39.  On January 4, 2016, GULLETT and KNOX attempted to kill Bruce Wayne Hurley by pointing a loaded firearm at Hurley and pulling the trigger; the gun misfired.

40.  On January 4, 2016, GULLETT, a convicted felon, possessed a handgun with a homemade silencer.

41. On a date unknown subsequent to January 4, 2016, but no later than May 2, 2016, MILLSAP offered OLIVER $40,000 to kill Bruce Wayne Hurley.

42. On February 29, 2016, GULLETT distributed approximately 12.889 grams actual of methamphetamine.

43. Between in or around March 2016 and no later than May 2, 2016, OLIVER offered an NAE associate identified to the Grand Jury $30,000 to kill Bruce Wayne Hurley.

44. On a date unknown but beginning no earlier than in or around March 2016, and ending no later than May 2, 2016, OLIVER offered an NAE associate identified to the Grand Jury $50,000 to kill Bruce Wayne Hurley.

45. On a date unknown but beginning in or around April 2016, and ending no later than May 2, 2016, OLIVER offered an NAE associate identified to the Grand Jury $30,000 to kill Bruce Wayne Hurley.

46. In or around April 2016, MILLSAP arranged to meet and pay $7,000 to an individual identified to the Grand Jury in exchange for methamphetamine that GULLETT had received.

47. In or around April 2016, MILLSAP offered an NAE associate identified to the Grand Jury money to kill Bruce Wayne Hurley.

48. On June 22, 2016, MILLSAP possessed approximately 30 grams of a mixture and substance containing a detectable amount of methamphetamine, as well as $32,754 and a 15-ounce silver bar.

49. Between in or around August 2016 through in or around September 2016, GULLETT distributed one-quarter pound of methamphetamine to an NAE associate.

50. Between in or around August 2016 through in or around December 2016, GULLETT distributed a half a pound of methamphetamine to an NAE associate.

51. From in or around August 2016 through in or around October 2016, GULLETT and KNOX, along with Kathrine R. Ross and Christopher S. Helms, possessed with intent to distribute approximately 1,360 grams of a mixture and substance containing a detectable amount of methamphetamine.

52. On September 20, 2016, GULLETT possessed with the intent to distribute approximately 19.77 grams of methamphetamine actual.

53. On September 20, 2016, GULLETT and Christopher S. Helms possessed with intent to distribute approximately 1,360 grams of a mixture and substance containing a detectable amount of methamphetamine.

54. On September 20, 2016, GULLETT, a convicted felon, possessed a Marlin, Model 1894, .357 magnum, lever action rifle, bearing serial number 20117681, and a Marlin, Model 336CS, 30-30 caliber, lever action rifle, bearing serial number 14086069.

55. During in or around November 2016, KNOX, Kathrine R. Ross, and Brittany S. Conner possessed with intent to distribute approximately 907 grams of a mixture and substance containing a detectable amount of methamphetamine.

56. From in or around January 2017 through in or around May 2017, ENOS possessed with intent to distribute 3,628 grams of a mixture and substance containing a detectable amount of methamphetamine.

57. On May 26, 2017, LONG, a convicted felon, possessed a Taurus, model 992 Tracker, .22 caliber revolver, bearing serial number FW676839.

58. Between May 28, 2017 and May 29, 2017, LONG, S. FERGUSON, and ENOS,

along with Carey Mooney, Courtney Talley, and others known and unknown to the Grand Jury, kidnapped C.L. in retaliation for C.L. providing information to law enforcement relating to LONG's involvement in a shooting.

59.    Between May 28, 2017 and May 29, 2017, LONG, S. FERGUSON, and ENOS, along with Carey Mooney and Courtney Talley, and others known and unknown to the Grand Jury, stabbed C.L. with a knife multiple times in retaliation for C.L. providing information to law enforcement relating to LONG's involvement in a shooting.

60.    Between May 28, 2017 and May 29, 2017, LONG, S. FERGUSON, and ENOS, along with Carey Mooney and Courtney Talley, and others known and unknown to the Grand Jury, kidnapped, beat, and stabbed C.L. in the leg with a knife, as well as threatened to kill C.L., in an attempt to convince C.L. to not testify as a witness in a felon in possession case against LONG.

61.    Between June 4, 2017 and June 6, 2017, T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, Bradley Chambers, and Amanda Rapp, and others known and unknown to the Grand Jury, kidnapped H.D. in retaliation for H.D. providing information to law enforcement relating to LONG's involvement in a shooting.

62.    Between June 4, 2017 and June 6, 2017, T.J. FERGUSON and LONG, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, Bradley Chambers, and others known and unknown to the Grand Jury, hit H.D. with fists and a baseball bat in retaliation for H.D. providing information to law enforcement relating to LONG's involvement in a shooting.

63.    Between June 4, 2017 and June 6, 2017, T.J. FERGUSON and LONG, along with

Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, Bradley Chambers, and others known and unknown to the Grand Jury, stabbed H.D. multiple times with a knife in retaliation for H.D. providing information to law enforcement relating to LONG's involvement in a shooting.

64.  Between June 4, 2017 and June 6, 2017, T.J. FERGUSON and LONG, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, and Bradley Chambers, and others known and unknown to the Grand Jury, maimed H.D. by placing a heated knife on his face causing permanent disfigurement.

65.  Between June 4, 2017 and June 6, 2017, T.J. FERGUSON and Long, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, and Bradley Chambers, and others known and unknown to the Grand Jury, maimed H.D. with a knife in retaliation for H.D. providing information to law enforcement relating to LONG's involvement in a shooting.

66.  Between June 4, 2017 and June 6, 2017, T.J. FERGUSON and LONG, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, Bradley Chambers, and others known and unknown to the Grand Jury, kidnapped, beat, maimed, stabbed, and threatened H.D., in an attempt to change H.D.'s testimony in a felon in possession investigation against LONG.

67.  Between June 4, 2017 and June 6, 2017, T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, along with Randall Rapp, Adam F. Mitchell, Christopher Buber, Russell Robinson, Bradley Chambers, and Amanda Rapp, and others known and unknown to the Grand Jury, kidnapped C.L. in retaliation for C.L. providing information to law enforcement relating to LONG's involvement in a shooting.

68.  In or around 2017, ENOS distributed approximately 2 ounces of a mixture and

substance containing a detectable amount of methamphetamine to OLIVER on more than 3 occasions.

69.  On a date unknown but beginning no later than in or around September 2015, and ending in or around October 2017, OLIVER obtained and sold approximately one-half ounce and 1-ounce quantities of a mixture and substance containing a detectable amount of methamphetamine on a bi-weekly basis.

<u>**Notice of Special Sentencing Factors**</u>

70.  Between in or around 2014, and continuing through on or about the date of this Superseding Indictment, in the Eastern District of Arkansas, and elsewhere, Defendants, MILLSAP, GULLETT, KNOX, OLIVER, T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, and ENOS, conspired and agreed with each other and others known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute, 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, and 50 grams or more of methamphetamine actual, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 846, and 841(b)(1)(A).

71.  Between on or about May 28, 2017, and continuing through on or about May 29, 2017, in the Eastern District of Arkansas, and elsewhere, Defendants, LONG, S. FERGUSON, ENOS and others known and unknown to the Grand Jury, did kidnap C.L., that is without consent, restrained C.L. so as to interfere substantially with C.L.'s liberty with the purpose of holding C.L. for an act to be performed or not performed for C.L.'s return or release; and inflicting physical injury upon C.L.; and terrorizing C.L., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), and 5-2-402.

72.  Between on or about June 4, 2017, and continuing through on or about June 6, 2017,

in the Eastern District of Arkansas, and elsewhere, Defendants, T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, ENOS, and others known and unknown to the Grand Jury, did kidnap C.L., that is without consent, restrained C.L. so as to interfere substantially with C.L.'s liberty with the purpose of holding C.L. for an act to be performed or not performed for C.L.'s return or release; and inflicting physical injury upon C.L.; and terrorizing C.L., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), and 5-2-402.

73.   Between on or about June 4, 2017, and continuing through on or about June 6, 2017, in the Eastern District of Arkansas, and elsewhere, Defendants T.J. FERGUSON, LONG, A. HOWELL, S. FERGUSON, and ENOS, and others known and unknown to the Grand Jury, did kidnap H.D., that is without consent, restrained H.D. so as to interfere substantially with H.D.'s liberty with the purpose of holding H.D. for an act to be performed or not performed for H.D.'s return or release; and inflicting physical injury upon H.D.; and terrorizing H.D., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), and 5-2-402.

## COUNT TWO:
### *[18 U.S.C. §§ 1959(a)(5) and 2 – Attempted Murder in Aid of Racketeering]*

The Grand Jury further charges:

1.   Paragraphs 1 through 20 of Count One of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.   The NAE, including its leadership, membership, and associates, constituted an enterprise as defined in Title 18, United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that engaged in, and the activities of which affected, interstate and foreign commerce. The enterprise constituted an ongoing organization whose members functioned as a continuing unit for a common purpose of achieving the objectives of the enterprise.

3.   The NAE, through its members and associates, engaged in racketeering activity, as defined in Title 18, United States Code, Sections 1959(b)(1) and 1961(1), namely, multiple acts

involving murder and kidnapping, in violation of Arkansas Code Annotated; multiple acts indictable under 18 U.S.C. §§ 1512 and 1513; and multiple offenses involving narcotics trafficking, in violation of 21 U.S.C. §§ 846 and 841.

4.      On or about January 4, 2016, in the Eastern District of Arkansas, the defendants,

MARCUS O. MILLSAP, aka Red;

WESLEY S. GULLETT, aka Bad Company, aka BC; and

JEFFREY L. KNOX, aka 100%,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did attempt to murder Bruce Wayne Hurley, in violation of Arkansas Code Annotated §§ 5-10-102, 5-3-201, and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(5) and 2.

**COUNT THREE:**
*[18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of Racketeering]*

The Grand Jury further charges:

1.      Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.      On or about January 4, 2016, in the Eastern District of Arkansas, the defendants,

WESLEY S. GULLETT, aka Bad Company, aka BC; and

JEFFREY L. KNOX, aka 100%,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did assault Bruce Wayne Hurley with a dangerous weapon, that is, a firearm, in violation of Arkansas Code Annotated §§ 5-13-204(a)(2) and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

**COUNT FOUR:**
*[18 U.S.C. §§ 1959(a)(1) and 2 – Kidnapping in Aid of Racketeering]*

The Grand Jury further charges:

1.    Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.    From on or about May 28, 2017 through on or about May 29, 2017, in the Eastern District of Arkansas, the defendants,

KEVIN M. LONG;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer;

PAULA S. ENOS;

CAREY MOONEY; and

COURTNEY TALLEY, aka Courtney Shreckhise, aka Courtney Caldwell,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did kidnap C.L., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

**COUNT FIVE:**
*[18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of Racketeering]*

The Grand Jury further charges:

1.    Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.    From on or about May 28, 2017 through on or about May 29, 2017, in the Eastern District of Arkansas, the defendants,

KEVIN M. LONG;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer;

PAULA S. ENOS;

CAREY MOONEY; and

COURTNEY TALLEY, aka Courtney Shreckhise, aka Courtney Caldwell;

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did assault C.L. with a dangerous weapon, that is, a bat and a knife, in violation of Arkansas Code Annotated §§ 5-13-201(a)(1), 5-13-202(a)(1), and (a)(2), and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT SIX:
### *[18 U.S.C. §§ 1959(a)(1) and 2 – Kidnapping in Aid of Racketeering]*

The Grand Jury further charges:

1.      Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.


2.      From on or about June 4, 2017 through on or about June 6, 2017, in the Eastern District of Arkansas, the defendants,

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

RANDALL RAPP;

ADAM F. MITCHELL, aka Pork Chop;

CHRISTOPHER BUBER;

RUSSELL ROBINSON;

BRADLEY CHAMBERS;

APRIL HOWELL, aka Apes;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer; and

AMANDA RAPP,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did kidnap H.D., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

**<u>COUNT SEVEN:</u>**
*[18 U.S.C. §§ 1959(a)(3) and 2 – Assault with a Dangerous Weapon in Aid of Racketeering]*

The Grand Jury further charges:

1.      Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.      From on or about June 4, 2017 through on or about June 6, 2017, in the Eastern District of Arkansas, the defendants,

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

RANDALL RAPP;

ADAM F. MITCHELL, aka Pork Chop;

CHRISTOPHER BUBER;

RUSSELL ROBINSON; and

BRADLEY CHAMBERS,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did assault H.D. with a dangerous weapon, that is, a bat and a knife, in violation of Arkansas Code Annotated §§ 5-13-201(a)(1), 5-13-202(a)(1), and (a)(2), and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(3) and 2.

## COUNT EIGHT:
### *[18 U.S.C. §§ 1959(a)(2) and 2 – Maiming in Aid of Racketeering]*

The Grand Jury further charges:

1.      Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.      From on or about June 4, 2017 through on or about June 6, 2017, in the Eastern District of Arkansas, the defendants,

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

RANDALL RAPP;

ADAM F. MITCHELL, aka Pork Chop;

CHRISTOPHER BUBER;

RUSSELL ROBINSON; and

BRADLEY CHAMBERS,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did maim H.D. with a hot knife, causing permanent disfigurement, in violation of Arkansas Code Annotated §§ 5-13-201(a)(2), and 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(2) and 2.

## COUNT NINE:
### *[18 U.S.C. §§ 1959(a)(1) and 2 – Kidnapping in Aid of Racketeering]*

The Grand Jury further charges:

1.      Paragraphs 1 through 20 of Count One and paragraphs 2 and 3 of Count Two of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.      From on or about June 4, 2017 through on or about June 6, 2017, in the Eastern

District of Arkansas, the defendants,

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

RANDALL RAPP;

ADAM F. MITCHELL, aka Pork Chop;

CHRISTOPHER BUBER;

RUSSELL ROBINSON;

BRADLEY CHAMBERS;

APRIL HOWELL, aka Apes;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer; and

AMANDA RAPP,

aided and abetted by each other and others known and unknown to the Grand Jury, for the purpose of gaining entrance to and maintaining and increasing position in the New Aryan Empire, an enterprise engaged in racketeering activity, did kidnap C.L., in violation of Arkansas Code Annotated §§ 5-11-102(a)(1)(B), (a)(4), and (a)(6), 5-2-402.

All in violation of 18 U.S.C. §§ 1959(a)(1) and 2.

## COUNT TEN:
### *[21 U.S.C. §§ 841 and 846 – Narcotics Conspiracy]*

1.      The allegations of Count One of this Superseding Indictment are hereby re-alleged and re-incorporated as though set forth fully herein.

2.      Beginning in or around 2014, and continuing through the date of this Superseding Indictment, in the Eastern District of Arkansas, and elsewhere, the defendants,

MARCUS O. MILLSAP, aka Red;

WESLEY S. GULLETT, aka Bad Company, aka BC;

JEFFREY L. KNOX, aka 100%;

JAMES SCOTT OLIVER, aka Scottie;

TIMOTHY J. FERGUSON, aka TJ;

28

KEVIN M. LONG;

APRIL HOWELL, aka Apes;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer;

PAULA S. ENOS;

TROY R. LOADHOLT, aka Tricky;

DAVID D. SINGLETON, aka LA;

DARLENE WALKER;

MICHAEL J. ROBERTS;

SHELBY L. THOMPSON, aka Shelby Roberts;

COREY A. FORD;

CORY S. DONNELLY;

LESA A. STANDRIDGE;

DALLAS D. STANDRIDGE;

JEFFREY G. HOWELL, aka Loon;

RICHARD K. HAMPTON;

SUSAN HAMPTON;

APRIL M. TEETER, aka April Crain;

MELISSA D. KIZER, aka Mel;

ANDREW R. SYVERSON, aka Drew;

ROBERT H. CHANDLER, aka Robbie;

BRITTANY FERGUSON, aka Brittany Gideon;

BRITTANIE N. HANDLEY;

TIFFANY L. PARKER;

HEATH KIZER;

RALPH A. ROSS, aka RA;

BRITANNY S. CONNER;

KATHRINE R. ROSS, aka Katie;

CHRISTOPHER S. HELMS;

TONY L. HEYDENREICH;

VALERIE J. BAKER, aka Valerie French;

THOMAS I. PLAISANCE, JR., aka Tommy;

WESLEY W. PIERSON;

HENRI T. KEENER, II;

JUSTIN B. HOWELL, aka Bubba;

JAYME L. SHORT;

AMOS ADAME;

SKIPPY D. SANDERS;

JARED R. DALE;

JAMES NICHOLAS GEORGE, aka Nick;

KEITH C. SAVAGE, aka KC; and

JOSEPH D. PRIDMORE,

voluntarily and intentionally conspired with each other, and with others known and unknown to the Grand Jury, to knowingly and intentionally distribute, and possess with intent to distribute, methamphetamine actual and a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

With respect to defendants MARCUS O. MILLSAP, aka Red, WESLEY S. GULLETT, aka Bad Company, aka BC, JEFFERY L. KNOX, aka 100%, JAMES SCOTT OLIVER, aka Scottie, TIMOTHY J. FERGUSON, aka TJ, KEVIN M. LONG, APRIL HOWELL, aka Apes, SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer, PAULA S. ENOS, TROY R. LOADHOLT, aka Tricky, DAVID D. SINGLETON, aka LA, DARLENE WALKER, MICHAEL J. ROBERTS, SHELBY L. THOMPSON, aka Shelby Roberts, COREY A. FORD, CORY S. DONNELLY, LESA A. STANDRIDGE, DALLAS D. STANDRIDGE, JEFFREY G. HOWELL, aka Loon, RICHARD K. HAMPTON, SUSAN HAMPTON, APRIL M. TEETER, aka April Crain, MELISSA D. KIZER, aka Mel, ANDREW R. SYVERSON, aka Drew, ROBERT H. CHANDLER, aka Robbie, BRITTANY FERGUSON, aka Brittany Gideon, TIFFANY L. PARKER, HEATH KIZER, BRITANNY S. CONNER, KATHRINE R. ROSS, aka Katie,

CHRISTOPHER S. HELMS, VALERIE J. BAKER,   aka Valerie French, THOMAS I. PLAISANCE, JR., aka Tommy, WESLEY W. PIERSON, HENRI T. KEENER, II, JUSTIN B. HOWELL, aka Bubba, JAYME L. SHORT, AMOS ADAME, SKIPPY D. SANDERS, JARED R. DALE, JAMES NICHOLAS GEORGE, aka Nick, KEITH C. SAVAGE, aka KC, and JOSEPH D. PRIDMORE, the amount of methamphetamine involved in the conspiracy attributable to each of them as a result of his or her own conduct, and the conduct of other co-conspirators reasonably foreseeable to him or her, is 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(A).

With respect to defendants RALPH A. ROSS, aka RA, and TONY L. HEYDENREICH, the amount of methamphetamine involved in the conspiracy attributable to each of them as a result of his own conduct, and the conduct of other co-conspirators reasonably foreseeable to him, is 50 grams or more, but less than 500 grams, of a mixture and substance containing a detectable amount of methamphetamine, in violation of Title 21, United States Code, Section 841(b)(1)(B).

With respect to defendant BRITTANIE N. HANDLEY, the amount of methamphetamine involved in the conspiracy attributable to her as a result of her own conduct, and the conduct of other co-conspirators reasonably foreseeable to her, is 5 grams or more, but less than 50 grams, of methamphetamine actual, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(b)(1)(B).

All in violation of Title 21, United States Code, Section 846.

## COUNT ELEVEN:
*[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about January 12, 2017, in the Eastern District of Arkansas, the defendant,

MICHAEL J. ROBERTS,

knowingly and intentionally possessed with intent to distribute 50 grams or more of

methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

## COUNT TWELVE:
### *[18 U.S.C. § 924(c) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime]*

On or about January 12, 2017, in the Eastern District of Arkansas, and elsewhere, the defendant,

### MICHAEL J. ROBERTS,

knowingly and intentionally possessed at least one of the following firearms, to wit:

1. a Smith and Wesson, M&P 15-22, .22 caliber rifle, bearing serial number DVW1137;

2. a SAIGA, .308 Winchester rifle, bearing serial number H08740892;

3. a DPMS, model A15, .223 caliber rifle, bearing serial number FH108560;

4. a Mossberg, model 500, 20-gauge shotgun, bearing serial number V0020126;

5. a Winchester, model 94, 30-30 caliber rifle, bearing serial number 4273624;

6. a Sturm Ruger, model Mini 14, .223 caliber rifle, bearing serial number 18074764;

7. a Winchester, model 37A, 20-gauge shotgun, bearing serial number C507588;

8. a Stevens, model 77A , 12-gauge shotgun;

9. a Westernfield, model 550CD, 20-gauge shotgun, bearing serial number M550CD;

10. a Smith and Wesson, model 22A-1, .22 caliber pistol, bearing serial number UBV4800;

11.    a Rossi, manufactured by Interarms, model M88, .38 caliber revolver, bearing serial number W517530; and

12.    a Cricket, .22 caliber rifle, bearing serial number 680653,

in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, namely, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), and 846, as further set forth in Counts Ten and Eleven of this Superseding Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A)(i).

## COUNT THIRTEEN:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about February 29, 2016, in the Eastern District of Arkansas, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

## COUNT FOURTEEN:
### *[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about November 16, 2016, in the Eastern District of Arkansas, the defendant,

DALLAS D. STANDRIDGE,

knowingly and intentionally possessed with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

33

**COUNT FIFTEEN:**
*[18 U.S.C. § 922(g)  –  Felon in Possession of a Firearm]*

A.      Prior to September 20, 2016, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

had previously been convicted of one or more of the following:

1.      Controlled substance/criminal penalties (possession of methamphetamine) and controlled substance/criminal penalties (delivery of methamphetamine), in Pope County, Arkansas, in case number CR 2008-516;

2.      Controlled substance/criminal penalties (possession of methamphetamine), in Pope County, Arkansas, in case number CR 2010-392;

3.      Delivery of methamphetamine/cocaine, two counts, in Pope County, Arkansas, in case CR 2012-364; and

4.      Breaking or entering and theft by receiving, in Pope County, Arkansas, in case CR 2013-138.

B.      The crimes set forth in paragraph A above were punishable by terms of imprisonment exceeding one year.

C.      On or about September 20, 2016, in the Eastern District of Arkansas, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

knowingly possessed one or more of the following firearms in and affecting commerce:  a Marlin, Model 1894, .357 magnum, lever action rifle, bearing serial number 20117681, and a Marlin, Model 336CS, 30-30 caliber, lever action rifle, bearing serial number 14086069, in violation of 18 U.S.C. § 922(g)(1).

34

## COUNT SIXTEEN:
### *[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about September 20, 2016, in the Eastern District of Arkansas, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

knowingly and intentionally possessed with the intent to distribute 5 grams or more, but less than

50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21

U.S.C. §§ 841(a)(1), (b)(1)(B).

## COUNT SEVENTEEN:
### *[18 U.S.C. § 924(c) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime]*

On or about September 20, 2016, in the Eastern District of Arkansas, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

knowingly and intentionally possess a firearm, that is: a Marlin, Model 1894, .357 magnum, lever

action rifle, bearing serial number 20117681, and a Marlin, Model 336CS, 30-30 caliber, lever

action rifle, bearing serial number 14086069, in furtherance of a drug trafficking crime for which

the defendant may be prosecuted in a court of the United States, namely, a violation of 21 U.S.C.

§§ 841(a)(1), 841(b)(1)(B), and 846, as further set forth in Counts Ten and Sixteen of this

Superseding Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A)(i).

## COUNT EIGHTEEEN:
### *[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about March 28, 2017, in the Eastern District of Arkansas, the defendant,

LESA A. STANDRIDGE,

knowingly and intentionally possessed with intent to distribute less than 50 grams of a mixture or

substance containing a detectable amount of methamphetamine, a Schedule II controlled

substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

## COUNT NINETEEN:
### *[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about April 17, 2017, in the Eastern District of Arkansas, the defendant,

### LESA A. STANDRIDGE,

knowingly and intentionally possessed with intent to distribute five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

## COUNT TWENTY:
### *[18 U.S.C. § 924(c) – Possession of a Firearm in Furtherance of a Drug Trafficking Crime]*

On or about April 17, 2017, in the Eastern District of Arkansas, and elsewhere, the defendant,

### LESA A. STANDRIDGE,

knowingly and intentionally possessed at least one or more of the following firearms, to wit: a Canik, manufactured by Century Arms, model TP9SA, 9 millimeter pistol, bearing serial number 15AP09177; a Remington, SPR, 12-gauge shotgun, bearing serial number 07018506R; and a Taurus, .38 special revolver, bearing serial number 869439, in furtherance of a drug trafficking crime for which the defendant may be prosecuted in a court of the United States, namely, a violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846, as further set forth in Counts Ten and Nineteen of this Superseding Indictment.

All in violation of 18 U.S.C. § 924(c)(1)(A)(i).

## COUNT TWENTY-ONE:
### *[18 U.S.C. § 922(g) – Felon in Possession of a Firearm]*

A.      Prior to April 17, 2017, the defendant,

### LESA A. STANDRIDGE,

had previously been convicted of one or more of the following:

1.    Delivery of a controlled substance methamphetamine, in Pope County, Arkansas, in criminal case CR 2013-452.

B.    The crime set forth in paragraph A above was punishable by a term of imprisonment exceeding one year.

C.    On or about April 17, 2017, in the Eastern District of Arkansas, the defendant,

LESA A. STANDRIDGE,

knowingly possessed one or more of the following firearms in and affecting commerce, to wit: a Canik, manufactured by Century Arms, model TP9SA, 9 millimeter pistol, bearing serial number 15AP09177; a Remington, SPR, 12-gauge shotgun, bearing serial number 07018506R; and a Taurus, .38 special revolver, bearing serial number 869439, in violation 18 U.S.C. § 922(g)(1).

## COUNT TWENTY-TWO:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about August 24, 2016, in the Eastern District of Arkansas, the defendant,

APRIL M. TEETER, aka April Crane,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

## COUNT TWENTY-THREE:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about October 3, 2016, in the Eastern District of Arkansas, the defendant,

APRIL M. TEETER, aka April Crane,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(B).

## COUNT TWENTY-FOUR:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about October 18, 2016, in the Eastern District of Arkansas, the defendant,

### BRITTANIE N. HANDLEY,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of

methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(B).

## COUNT TWENTY-FIVE:
### *[18 U.S.C. § 922(g) – Felon in Possession of a Firearm]*

A.    Prior to February 8, 2017, the defendant,

### CHRISTOPHER S. HELMS,

had previously been convicted of the following:

      1.    Possession of a controlled substance, in the Pope County, Arkansas,

in case CR 2002-374.

B.    The crime set forth in paragraph A above was punishable by a term of imprisonment

Exceeding one year.

C.    On or about February 8, 2017, in the Eastern District of Arkansas, the defendant,

### CHRISTOPHER S. HELMS,

knowingly possessed the following firearm in and affecting commerce, to wit, a Smith and

Wesson, model Bodyguard, .380 caliber pistol, bearing serial number KBC881, in violation 18

U.S.C. § 922(g)(1).

### COUNT TWENTY-SIX:
*[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about April 26, 2017, in the Eastern District of Arkansas, the defendant,

VALERIE J. BAKER, aka Valerie French,

knowingly and intentionally distributed 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

### COUNT TWENTY-SEVEN:
*[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about May 13, 2017, in the Eastern District of Arkansas, the defendant,

VALERIE J. BAKER, aka Valerie French,

knowingly and intentionally possessed with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

### COUNT TWENTY-EIGHT:
*[21 U.S.C. § 841 – Possession with Intent to Distribute Methamphetamine]*

On or about May 12, 2017, in the Eastern District of Arkansas, the defendants,

VALERIE J. BAKER, aka Valerie French; and
WESLEY W. PIERSON,

knowingly and intentionally possessed with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 18 U.S.C. § 2.

### COUNT TWENTY-NINE:
*[18 U.S.C. § 922(g) – Felon in Possession of a Firearm]*

A.    Prior to May 26, 2017, the defendant,

KEVIN M. LONG,

had previously been convicted of one or more of the following:

39

1.      Battery 2nd, in Pope County, Arkansas, in case CR 2013-301;

2.      Forgery 2nd Degree, in Pope County, Arkansas, in case CR 2013-317;

3.      Delivery of methamphetamine, in Pope County, Arkansas, in case CR 2013-498; and

4.      Residential Burglary, in Pope County, Arkansas, in case CR 2014-233.

B.      The crimes set forth in paragraph A above were punishable by a term of imprisonment exceeding one year.

C.      On or about May 26, 2017, in the Eastern District of Arkansas, the defendant,

KEVIN M. LONG,

knowingly possessed the following firearm in and affecting commerce, to wit, a Taurus, model 992 Tracker, .22 caliber revolver, bearing serial number FW676839, in violation of 18 U.S.C. § 922(g)(1).

## COUNT THIRTY:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about April 19, 2017, in the Eastern District of Arkansas, the defendant,

JARED R. DALE,

knowingly and intentionally distributed 50 grams or more of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A).

## COUNT THIRTY-ONE:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about February 17, 2017, in the Eastern District of Arkansas, the defendant,

JOSEPH D. PRIDMORE,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(B).

## COUNT THIRTY-TWO:
### *[21 U.S.C. § 841 – Distribution of Methamphetamine]*

On or about February 28, 2017, in the Eastern District of Arkansas, the defendant,

JOSEPH D. PRIDMORE,

knowingly and intentionally distributed five grams or more, but less than 50 grams, of methamphetamine (actual), a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B).

## FORFEITURE ALLEGATION ONE

Upon conviction of one or more of the offenses alleged in Count One of this Superseding Indictment, the defendants,

MARCUS O. MILLSAP, aka Red;

WESLEY S. GULLETT, aka Bad Company, aka BC;

JEFFREY L. KNOX, aka 100%;

JAMES SCOTT OLIVER, aka Scottie;

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

APRIL HOWELL, aka Apes;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer;

PAULA S. ENOS;

shall forfeit to the United States, pursuant to 21 U.S.C. § 853(a) and 28 U.S.C. § 2461(c):

1.    all property, constituting, or derived from, proceeds the defendants obtained, directly or indirectly, as a result of the offense(s); and

2.    all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense(s).

## FORFEITURE ALLEGATION TWO

Upon conviction of one or more of the offenses alleged in Count Ten of this Superseding

Indictment, the defendants,

MARCUS O. MILLSAP, aka Red;

WESLEY S. GULLETT, aka Bad Company, aka BC;

JEFFREY L. KNOX, aka 100%;

JAMES SCOTT OLIVER, aka Scottie;

TIMOTHY J. FERGUSON, aka TJ;

KEVIN M. LONG;

RANDALL RAPP;

ADAM F. MITCHELL, aka Pork Chop;

CHRISTOPHER BUBER;

RUSSELL ROBINSON;

BRADLEY CHAMBERS;

APRIL HOWELL, aka Apes;

SHANNON J. FERGUSON, aka Shannon Pridmore, aka Shannon Spencer;

PAULA S. ENOS;

CAREY MOONEY;

COURTNEY TALLEY, aka Courtney Shreckhise, aka Courtney Caldwell;

AMANDA RAPP;

TROY R. LOADHOLT, aka Tricky;

DAVID D. SINGLETON, aka LA;

DARLENE WALKER;

MICHAEL J. ROBERTS;

SHELBY L. THOMPSON, aka Shelby Roberts;

COREY A. FORD;

CORY S. DONNELLY;

LESA A. STANDRIDGE;

DALLAS D. STANDRIDGE;

JEFFREY G. HOWELL, aka Loon;

RICHARD K. HAMPTON;

SUSAN HAMPTON;

APRIL M. TEETER, aka April Crain;

MELISSA D. KIZER, aka Mel;

ANDREW R. SYVERSON, aka Drew;

ROBERT H. CHANDLER, aka Robbie;

BRITTANY FERGUSON, aka Brittany Gideon;

BRITTANIE N. HANDLEY;

TIFFANY L. PARKER;

HEATH KIZER;

RALPH A. ROSS, aka RA;

BRITANNY S. CONNER;

KATHRINE R. ROSS, aka Katie;

CHRISTOPHER S. HELMS;

TONY L. HEYDENREICH;

VALERIE J. BAKER, aka Valerie French;

THOMAS I. PLAISANCE, JR., aka Tommy;

WESLEY W. PIERSON;

HENRI T. KEENER, II;

JUSTIN B. HOWELL, aka Bubba;

JAYME L. SHORT;

AMOS ADAME,

SKIPPY D. SANDERS;

JARED R. DALE;

JAMES NICHOLAS GEORGE, aka Nick;

KEITH C. SAVAGE, aka KC; and

JOSEPH D. PRIDMORE,

shall forfeit to the United States, pursuant Title 18, United States Code, Section 924(d), Title 21,

United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c):

1. all property, constituting, or derived from, proceeds the defendants obtained,

directly or indirectly, as a result of the offense(s); and

2.  all property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense(s).

## FORFEITURE ALLEGATION THREE

Upon conviction of the offenses alleged in Counts One, Ten, Sixteen, and Seventeen of this Superseding Indictment, the defendant,

WESLEY S. GULLETT, aka Bad Company, aka BC,

shall forfeit to the United States to pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c), all of the person's property used or intended, in any manner or part, to commit, or to facilitate the commission of the offense and all firearms and ammunition involved in the commission of the offense, including, but not limited to:

1.  One (1) Marlin, Model 336CS, 30-30 caliber, lever action rifle, bearing serial number 14086069; and

2.  Assorted ammunition.

All pursuant to 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c).

## FORFEITURE ALLEGATION FOUR

Upon conviction of the offense alleged in Counts Ten, Nineteen, Twenty, and Twenty-One of this Superseding Indictment, the defendant,

LESA M. STANDRIDGE,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c), all of the person's property used or intended to be used, in any manner or part, to commit, or to facilitate

the commission of the offense and all firearms and ammunition involved in the commission of the offense, including, but not limited to:

      1.      One (1) Canik, manufactured by Century Arms, model TP9SA, 9 millimeter pistol, bearing serial number 15AP09177;

      2.      One (1) Remington, SPR, 12-gauge shotgun, bearing serial number 07018506R;

      3.      One (1) Taurus, .38 special revolver, bearing serial number 869439; and

      4.      Ammunition.

## FORFEITURE ALLEGATION FIVE

Upon conviction of the offense alleged in Counts One, Ten, and Twenty-Nine of this Superseding Indictment, the defendant,

KEVIN M. LONG,

shall forfeit to the United States, pursuant to pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c), all of the person's property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of the offense and all firearms and ammunition involved in the commission of the offense, including, but not limited to:

      1.      One (1) Taurus, model 992 Tracker, .22 caliber revolver, bearing serial number FW676839; and

      2.      Ammunition.

## FORFEITURE ALLEGATION SIX

Upon conviction of the offenses alleged in Count Ten of this Superseding Indictment, the defendant,

HEATH KIZER,

shall forfeit to the United States to pursuant to Title 18, United States Code, Section 924(d), Title 21, United States Code, Section 853(a), and Title 28, United States Code, Section 2461(c), all of the person's property used or intended, in any manner or part, to commit, or to facilitate the commission of the offense and all firearms and ammunition involved in the commission of the offense, including, but not limited to:

1. Sportarms of Florida, model unknown, .22 caliber revolver, bearing serial number 792834;
2. Savage, model 1905, .32 caliber pistol, bearing serial number 223760;
3. Cobra Enterprises, Inc./Kodiak Ind., model CA380, .380 caliber pistol, bearing serial number CP096891;
4. Ruger, model P89, .9 caliber pistol, bearing serial number 30797872;
5. Sig-Sauer, model P226, .9 caliber pistol, bearing serial number U875604;
6. Colt, model unknown, .30 caliber revolver, bearing no serial number;
7. Ruger, model Super Redhawk, .480 caliber revolver, bearing serial number 55190029;
8. Davis Industries, model P32, .32 caliber pistol, bearing serial number P093157;
9. Keltec Industries, Inc., model PF-9, .9 caliber pistol, bearing serial number RXN74;
10. Glock Inc., model 34GEN4, .9 caliber pistol, serial number RBU494;
11. Century Arms International, model Centurion UC-9, .9 caliber rifle, bearing serial number GMT01968;
12. Taurus, model Rossi S411220BS, 410 caliber shotgun, bearing serial number SR107877;
13. Rossi, model M59, .22 caliber rifle, bearing serial number H003266;
14. Savage, model Axis, 30-06 caliber rifle, bearing serial number H414737;
15. Ruger, model 10/22, .22 caliber rifle, bearing serial number 000369424;
16. CBC (Companhia Braziliera De Cartuchos), model 715T, .22 caliber rifle, bearing serial number ELK3555825;
17. Remington Arms Company, Inc., model 700, 30-60 caliber rifle, bearing serial number G7160130;
18. Ruger, model M77 Mark II, .243 caliber rifle, bearing serial number 781-59990;

46

19. Mossberg, model 353, .22 caliber rifle, bearing no serial number;

20. Rossi, model R243MBS, .243 caliber rifle, bearing serial number CA065178;

21. Winchester, model 70, 300 caliber rifle, bearing serial number G2211303;

22. Marlin Firearms Co., model 25M, .22 caliber rifle, bearing serial number 13695386;

23. Savage, unknown model, unknown caliber rifle, bearing serial number D552885;

24. Charter Arms, model AR7 Explorer, .22 caliber rifle, bearing serial number A230426;

25. Remington Arms Company, Inc. model 870 Express, .12 caliber rifle, bearing serial number W533329M;

26. Savage, model unknown, unknown caliber shotgun, bearing serial number A994210;

27. Remington Arms Company, Inc., model 870, .12 caliber shotgun, bearing no serial number;

28. CBC (Companhia Braziliera De Cartuchos), model SB, .410 caliber shotgun, bearing serial number C975753;

29. North American Arms, model unknown, unknown caliber revolver, bearing serial number VT02268;

30. Four (4) rounds of assorted .22 caliber ammunition;

31. Marlin Firearms Co., model 25MM, .22 caliber rifle, bearing serial number 00364824;

32. Unknown manufacturer, model unknown, unknown caliber rifle, bearing serial number 138089;

33. Marlin Firearms Co., model 75C, .22 caliber rifle, bearing serial number 23384436;

34. Mossberg, model 500C, .20 caliber shotgun, bearing serial number P201729;

35. New England Firearms, model Pardner, .12 caliber shotgun, bearing serial number NL221864;

36. Marlin Firearms Co., model 60W, .22 caliber rifle, bearing serial number 03137233; and

37. Hopkins and Allen, model unknown, caliber unknown receiver, bearing no serial number.

All pursuant to 18 U.S.C. § 924(d), 21 U.S.C. § 853, and 28 U.S.C. § 2461(c).